**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| DILENIA PAGUADA, on behalf of herself and all others similarly situated, | : : : | Civil Case No.: 1:21-cv-01245 (KPF) |
| Plaintiff, | : : | |
| vs. | : : | ORAL ARGUMENT REQUESTED |
| ATHENA ALLERGY, INC., | : : | |
| Defendant, | : : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

i

**TABLE OF CONTENTS**

**Pages**

I. INTRODUCTION…………………………………………………………..1

II. PROCEDURAL HISTORY……………………………………...……….2

III. STATEMENT OF FACTS…………………………………………………..3

IV. LEGAL STANDARDS…..…………………………………………………..5

    A. Standards When Evaluating a Fed. R. Civ.
       P.12(B)(2) Challenge ….…………………………………………………5

    B. Websites are Places of Public
       Accommodation Under the ADA….…………………………………..6

V. ARGUMENT………………………………………………………………….7

    A. This Court has Personal
       Jurisdiction Over Defendant ….…………………………………….....7

    B. This Defendant's Website is a Place of
       Public Accommodation Under the ADA …………………………….10

    C. Plaintiff's New York City Claims Remain
       Valid……………………………………..………………………………14

VI. CONCLUSION……………………………………..……...………………….15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Access Living of Metro Chi. V. Uber Techs, Inc.*,
351 F. Supp 3d 1141 (N.D. Ill. 2018)..................................................................................14

*Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL,
2017 U.S. Dist. LEXIS 185112 (D.N.H. Nov. 8, 2017)......................................................14

*Access Now, Inc. v. Sportswear, Inc.*,
298 F. Supp. 3d 296 (D. Mass. 2018)....................................................................................8

*A.I. Trade Fin., Inc., v. Petra Bank*,
989 F.2d 76 (2d Cir. 1993) ....................................................................................................5

*Am. Girl, LLC v. Zembrka*, 1:21-CV-02372 (MKV),
2021 U.S. Dist. LEXIS 81897 (S.D.N.Y. Apr. 28, 2021) .....................................................9

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. 2017)....................................................................10, 11, 12

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007))..................................................................................................7

*Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF),
2019 U.S. Dist. LEXIS 222854, (S.D.N.Y. Dec. 30, 2019)).............................................14

*Calcano v. Cole Haan LLC*,19 Civ. 10440 (AT),
2021 U.S. Dist. LEXIS 41734 (S.D.N.Y. Mar. 5, 2021)...........................................2, 6, 11

*Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER),
2019 U.S. Dist. LEXIS 178306 (S.D.N.Y. Oct. 15, 2019)...................................................7

*Camacho v Vanderbilt Univ.*, 18 Civ. 10694,
2019 U.S. Dist. LEXIS 209202 (Dec. 4. 2019)................................................1,5,6,7,8, 10

*Clemmons v. Hodes*, 15 Civ. 8975 (KPF),
2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. Sept. 26, 2017) .................................................5

*Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE),
2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) .......................................2, 6, 11

*Doe v. Mutual of Omaha Ins. Co.*,
528 U.S. 1106 (2000) (cert. denied) ...................................................................................13

*Dominguez v Banana Republic, LLC*, 1:19-cv-10171-GHW,
2020 U.S. Dist. LEXIS 72193 (S.D.N.Y Apr. 23, 2020) ....................................................11

*Elsevier, Inc., v. Grossman*,
77 F. Supp. 3d 331 (S.D.N.Y. 2015) ....................................................................................5

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen*,
12 Civ. 6390 (JPO), 2013 U.S. Dist. LEXIS 59538 (S.D.N.Y. Apr. 25, 2013) ...................7

*Gil v. Winn-Dixie Stores, Inc.*, No. 17-13467,
28 Fla. L. Weekly Fed. C 2673 (U.S. 11th Cir. 2021) ........................................................11

*Gregory v. Daly,*
243 F.3d 687 (2d Cir. 2001) .................................................................................................5

*Guglielmo v JEGS Auto., Inc*., 20-cv-5376 (LJL),
 2021 U.S. Dist. LEXIS 50347, (S.D.N.Y. Mar. 17, 2021) ..................................................7

*Guglielmo v. Neb. Furniture Mart, Inc,* 19 Civ 11197 (KPF),
2020 U.S. Dist. LEXIS 238707 (S.D.N.Y. Dec. 18 2020) ...................................................9

*Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec*.,
311 F.3d 534 (2d Cir. 2002)) ............................................................................................3, 8

*Ikeda v. J. Sisters 57, Inc*., 14-cv-3570 (ER),
2015 U.S. Dist. LEXIS 87783 (S.D.N.Y., July 6, 2015) .....................................................9

*Jaquez v. Dermpoint*, 20-CV-7589 (JPO),
2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021) ............................................11, 12

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD)
(BCM), 2017 U.S. Dist. LEXIS 29806, (S.D.N.Y. Mar. 2, 2017) ......................................6

*Lan Wang v. Pataki*,
396 F. Supp 2d 446 (S.D.N.Y. 2005) ..................................................................................3

*Markett v. Five Guys Enters. LLC*, No. 17-cv-788 (KBF),
2017 U.S. Dist. LEXIS 115212 (S.D.N.Y. July 21, 2017) ............................................6, 12

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
707 F.3d 144 (2d Cir. 2013) .................................................................................................6

*Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039,
2021 U.S. Dist. LEXIS 13354  (W.D. Va. Jan. 25, 2021) .................................................. 13

*Metro. Life Ins. Co., v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ............................................................................................... 5

*Morgan v. Joint Admin Bd.*,
268 F.3 456(7th Cir. 2001) ............................................................................................ 13

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*,
869 F. Supp. 2d 196 (D. Mass. 2012) .............................................................................. 14

*National Federation of the Blind v. Scribd. Inc.*,
97 F. Supp. 3d 565 (D. Vt. 2015) ..................................................................................... 12

*Noel v. New York City Taxi and Limousine Comm'n*,
687 F.3d 63 (2d Cir. 2012) ................................................................................................ 5

*Novelaire Techs., L.L.C. v. Munters AB*, No 13 Civ. 472 (CM),
2013 U.S. Dist. LEXIS 168192 11 (S.D.N.Y. Nov. 21, 2013) .......................................... 7

*Pallozzi v. Allstate Life Ins, Co.*,
198 F.3d 28 (2d Cir. 1999) ......................................................................................... 6, 10

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 11617 (S.D.N.Y., Mar. 20, 2006) ............. 10

*Sanchez v. Webull Financial LLC*,
No. 1:21cv930 (S.D.N.Y. June 9, 2021) .......................................................................... 12

*Thorne v. Boston Mkt. Corp.*,
469 F. Supp 3d 130, (S.D.N.Y. 2020) ............................................................................. 11

**Statutes**

    28 U.S.C. §1367(A) ....................................................................................................... 15

    42 U.S.C. § 12181 *et seq.* ........................................................................................ *passim*

    N.Y. C.P.L.R. § 302(A)(1) ....................................................................................... *passim*

**Rules**

    Fed. R. Civ. P.  12(b)(2) ........................................................................................... *passim*

    28 C.F.R. § 35 App. A (2010) ......................................................................................... 13

Plaintiff Dilenia Paguada ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Athena Allergy Inc.'s ("Defendant") motion to dismiss ("Motion to Dismiss").

I.    **INTRODUCTION**

The First Amended Class Action Complaint ("FACAC")[1] properly pleads this Court's personal jurisdiction over Defendant for violations of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL").

This Motion to Dismiss should be denied in its entirety as it attempts to obfuscate the clear circumstances, ***including rulings by this very Court***, that permit personal jurisdiction under New York's Long Arm Statute given Defendant's sufficient business contacts with the State of New York. Indeed, as this Court has already held, a fully interactive website that "knowingly transmit goods or services to users in other states" is sufficient to confer personal jurisdiction pursuant to Section 302(a)(1). *Camacho v Vanderbilt Univ.*, 18 Civ. 10694, 2019 U.S. Dist. LEXIS 209202, at *13 (Dec. 4. 2019).

The circumstances of this case are substantively similar: Defendant's Website sells products to New York originating from Defendant. Thus, the overall interactivity of Defendant's Website – which allows for the ordering and delivery of commercial products directly to consumers in New York State – supports personal jurisdiction over Defendant in New York. Defendant's motion does not address the clear principles established by this Court in the *Camacho* case whatsoever. Likewise, Defendant's protestations of due process are likewise unavailing given

---

[1] "¶__" means a citation to paragraph numbers in the FACAC. "Def. Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 17).

1

the minimal burden of litigating out-of-state in a digital age where the movement of people and goods across state lines is facilitated by the instantaneous "wonder" of the internet.

Similarly, the clear and unambiguous precedents of the Southern District of New York hold a website is unequivocally a place of public accommodation. As noted in the only Southern District case which Defendant (incompletely) cited for this proposition, "[a] commercial website itself qualifies as a place of "public accommodation" to which Title III of the ADA affords a right of equal access." *Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *19 (S.D.N.Y. Dec. 20, 2017).  All Southern District of New York courts that have ruled on this issue have found personal jurisdiction over website accessibility actions (with similar circumstances).  Indeed, as Judge Torres observed, courts have held commercial websites themselves to be places of public accommodation. *See Calcano v. Cole Haan LLC*, 19 Civ. 10440 (AT), 2021 U.S. Dist. LEXIS 41734, at *10 (S.D.N.Y. Mar. 5, 2021). This is not addressed in Defendant's instant motion, which oddly relies on law from a foreign circuit while glossing over the S.D.N.Y. rulings.

Lastly, because Defendant has failed to establish grounds for dismissal of Plaintiff's ADA claims, Defendant's attempts at disposing of this Court's supplemental jurisdiction over Plaintiff's NYCHRL claims also fail.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied.

## II.     **PROCEDURAL HISTORY**

On February 11, 2021, Plaintiff filed the initial complaint in this action. ECF No. 1. Thereafter, Defendant filed a letter motion requesting a premotion conference for leave to file a motion to dismiss the initial Complaint on April 19, 2021. ECF No. 12. Plaintiff responded in a letter on April 22, 2021, denying the basis for Defendant's proposed motion. ECF No. 13.

Following a pre-motion conference held before this Court on April 28, 2021, this Court granted Plaintiff leave to file an amended complaint on or before May 21, 2021. Plaintiff then filed the FACAC on May 21, 2021. ECF No. 17. Thereafter, on June 10, 2021, Defendant again filed a letter requesting leave to file a proposed a motion to dismiss, and the Court granted a briefing schedule on the same date. ECF Nos. 18-19. Defendant filed the instant Motion to Dismiss and Memorandum of Law on August 9, 2021. ECF Nos. 20, 22.

## III.  STATEMENT OF FACTS

Defendant is a manufacturer of nickel-free apparel and jewelry that owns and operates the website www.athenaallergy.com (its "Website"). ¶21.  The Website offers goods for sale to consumers that include nickel-free apparel, jewelry, and belts for purchase and delivery throughout the United States, including New York. ¶¶ 22-23.[2]

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software to read website content using her personal computer. ¶¶1, 12.  Plaintiff made several visits to the Website beginning on January 18, 2021. ¶26.  Plaintiff browsed and attempted to transact business on Defendant's Website by way of, *inter alia*: (i) purchasing nickel-free earrings; and (ii) understanding the different product details for the products offered on the Website in order to complete a purchase by, for instance, listening to audio descriptions of the images on

---

[2]    The Website offers shipments throughout the United States, a fact that is demonstrated by the Website's shipping policy, which can be accessed by adding a product to the "cart." *See* https://athenaallergy.com/3538573/checkouts/4f4f0090b7cd3c239a55d14dfa696ffa?skip_shopify_pay=true&locale=en (last visited October 1, 2021). Likewise, the Website also notes that Defendant relies on USP Standard Shipping and US Priority Mail, to ship items throughout the United States, including the Western, Central and Eastern US with an estimated Delivery time of 3-4 business days to the Eastern United States from Charlotte North Carolina. *See* https://athenaallergy.com/pages/shipping-information-for-your-athena-allergy-inc-order?_pos=3&_sid=1d09dba59&_ss=r (last visited October 1, 2021). As a public document, it is appropriate for the Court to take notice of content on a website on a motion to dismiss where the authenticity of a website has not been questioned. *See Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec.*, 311 F.3d 534, 549 (2d Cir. 2002); *Lan Wang v. Pataki*, 396 F. Supp 2d 446, 456 (S.D.N.Y. 2005).

the Website. ¶4. Plaintiff was unable to successfully do these things because the Website was not compliant with the current ADA accessibility standards and contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date of the filing of the FACAC. ¶¶4, 26. Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the services offered to the general public on the Website. ¶27. These barriers include, without limitation (collectively, the "Access Barriers"):

- the Website did/does not allow the visually impaired – and did not permit Plaintiff – to properly transact business and understand the "shopping bag" or "cart" feature, which serves as the only way for the blind to purchase products. Specifically, when an item is added to the cart, the screen-reader describes it as "unavailable";
- none of the graphics of the items offered for sale include descriptions that can be interpreted by the screen-reader. As such, visually-impaired customers cannot make an informed choice about their purchases because the products appearance cannot be described to them in a non-visual manner;
- site elements like text on titles which appear above the homepage and product collections is not labeled properly to integrate with screen reader and some text is skipped over, causing the screen reader to not operate properly and preventing the user from thoroughly understanding the text and navigating around the Website.
- Menus below the titles do not drop down automatically when selected, impeding site navigation and causing delays for blind or visually impaired consumers. ¶28.

Plaintiff was highly interested in purchasing the nickel free earrings offered by Defendant as she is allergic to nickel which is often found in other types of jewelry. *Id*. While Plaintiff was denied equal access to the Website, Plaintiff remains hopeful that the Access Barriers will be cured,

as she intends to return to the Website to purchase jewelry as soon as the Accessibility Barriers are cured. *Id*.

### IV. LEGAL STANDARDS

The Second Circuit cautions courts from prematurely dismissing complaints of civil rights violations. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

#### A.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(2) CHALLENGE

"To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff has the burden of establishing that the court has jurisdiction over the defendant." *Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550, at *18-*19 (S.D.N.Y. Sept. 26, 2017) (*citing Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). When considering a Rule 12(b)(2) motion to dismiss, a court must construe all of the plaintiff's allegations as true. *See Elsevier, Inc., v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (*citing A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)).

As this Court has ruled, under New York C.P.L.R. §302(a)(1), a court determines whether it has personal jurisdiction by examining: (1) whether the defendant transacts any business in New York; and (2) whether the cause of action arises from such a business transaction. *See Camacho* 2019 U.S. Dist. LEXIS 209202, at *7 (*quoting* N.Y. C.P.L.R. § 302(a)(1)). To determine whether the operation of a website amounts to the transaction of business in New York, courts typically look at the degree of interactivity offered by the website. *Id*. at *12. If the website falls on the far end of the spectrum by directly allowing the purchase of goods or services, then the website is

"fully interactive" and can serve as a basis for personal jurisdiction. *Id*. at *13. Similarly, New York's long-arm statute provides for specific jurisdiction over a non-domiciliary that, "in person or through an agent" transacts any business within the state or contracts anywhere to supply goods or services in the state." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *21 (S.D.N.Y. Mar. 2, 2017).

### B. WEBSITES ARE PLACES OF PUBLIC ACCOMODATION UNDER THE ADA

It is well-established in the Southern District of New York that "[a] commercial website itself qualifies as a place of "public accommodation" to which Title III of the ADA affords a right of equal access." *Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *19 (S.D.N.Y. Dec. 20, 2017); *Calcano*, 2021 U.S. Dist. LEXIS 41734, at *10 (noting that "[c]ourts have found that commercial websites may be places of public accommodation because they are a place, figurative or not, where defendants offer goods to customers"). This is in keeping with the ADA's underlying purpose to prevent discrimination against disabled individuals in major areas of public life. *See Markett v. Five Guys Enters. LLC*, No. 17-cv-788 (KBF), 2017 U.S. Dist. LEXIS 115212, at *3-*4 (S.D.N.Y. July 21, 2017) (*citing Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013)). This flows logically from the precedent of the Second Circuit, which has stated that the Title III's mandate ensures "full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] more than mere physical access." *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999).

V.     ARGUMENT

   A. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

This Court has personal jurisdiction over Defendant as the New York long-arm statute provides for an exercise of personal jurisdiction "over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  A highly interactive website, like the one Defendant operates, meets the requirements of personal jurisdiction under C.P.L.R. § 302(a). For a website to confer jurisdiction, "[s]omething more [than visibility in the forum state] is necessary, such as interactive features which allow the successful online ordering of the defendant's products." *Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 U.S. Dist. LEXIS 168192, at *10-*11 (S.D.N.Y. Nov. 21, 2013) (*citing Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen*, 12 Civ. 6390 (JPO), 2013 U.S. Dist. LEXIS 59538, at *26 (S.D.N.Y. Apr. 25, 2013)). Specifically, as this Court has already held, the degree of interactivity and the commercial nature of the exchange of information that occurs on the site is indicative of whether a court can exercise personal jurisdiction. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *12. If a website "allows for transactions to be completed, for example, by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007)); *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306, at *8 (S.D.N.Y. Oct. 15, 2019); *Guglielmo v JEGS Auto., Inc*., 20-cv-5376 (LJL), 2021 U.S. Dist. LEXIS 50347, at *13-*14 (S.D.N.Y. Mar. 17, 2021) ("If, at the time of filing of this action, Defendant was selling products through its Website to New York customers and at the same time displaying the Website to Plaintiff by denying him the access other New York customers had to

7

purchase products, those facts would held establish personal jurisdiction and create the articulable nexus or substantial relationship between the business transaction and the claim asserted.")

Similar to this Court's decision establishing personal jurisdiction in *Camacho*, Defendant's business ties to New York State are demonstrated by the information on its own Website. Items on Plaintiff's Website, when placed in the "cart" function, can be shipped directly to Website customers in New York State.[3] Additionally, the Website clearly solicits business from areas including New York state, as the Website advertises estimated shipping times to customers throughout the Eastern United States.[4] As a result, the Website falls into the fully interactive category, offering New Yorkers the ability to visit and purchase goods, including, but not limited, to jewelry and apparel. Since Plaintiff unsuccessfully attempted to complete a transaction to have goods delivered to her at her New York residence while on the Website, the Court clearly has personal jurisdiction over this interactive Website's owner. *See, e.g.*, *Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 301 (D. Mass. 2018) (finding, where the plaintiff alleged the defendant's website limited accessibility to visually impaired consumers and that the plaintiff attempted to access the website with the assistance of his screen reader from the forum, "[b]ecause [the plaintiff's] denial of access to [the defendant's] website occurred in the forum, the injury arises from [the defendant's] transaction of business through its website in [the forum]").

To rebut this, Defendant offers the affidavit of company President, Lea Dow, which states, "[Defendant does] not specifically advertise in the State of New York or target business from the State of New York." ECF No. 21-3. However, such argument is too clever by half. By focusing on what Defendant does not do in its business practices, Defendant's affidavit tacitly admits that

---

[3] *See* Declaration of Mars Khaimov, attached hereto as <u>Exhibit A.</u>
[4] *See* www.athenallergy.com, last visited October 1, 2021. Once again, neither party disputes the authenticity of the website, a public document. *See Hotel Emples. & Rest Emples. Union, Local* 100, 311 F.3d at 549.

its Website delivers goods and services to New York and that the Defendant has made sales through the Website in New York.  This stands in marked contrast to the cases cited by Defendant, including this Court's decision, where the record affirmatively showed that those defendants did not, and could not, ship any goods whatsoever to any customers in the State of New York. *See Guglielmo v. Neb. Furniture Mart, Inc,* 19 Civ 11197 (KPF), 2020 U.S. Dist. LEXIS 238707, at *23-*24 (S.D.N.Y. Dec. 18, 2020) ("Defendant's delivery policy permits deliveries to [] customers within a 300-mile radius of one of Defendant's physical retail locations. . . Defendant's store nearest to New York City is approximately 1,100 miles away."); *see also Am. Girl, LLC v. Zembrka*, 1:21-CV-02372 (MKV), 2021 U.S. Dist. LEXIS 81897, at *14 (S.D.N.Y. Apr. 28, 2021) ("Defendants claim to have a policy of not shipping products to the United States and to refund any money paid by a potential American purchaser."). In this case, there is no such categorical denial by Defendant that it does not make deliveries to New York, much less that it is incapable of doing so.

      In the alternative, should this Court not be inclined to exercise personal jurisdiction over Defendant, Plaintiff respectfully requests leave to conduct limited jurisdictional discovery into Defendant's suit-related contacts with New York State, including the extent of Defendant's use of the Website to conduct business in New York.  Such jurisdictional discovery is likely to produce evidence of Defendant's proactive attempts at conducting business with New York residents, thus establishing further grounds for personal jurisdiction against Defendant. *See Ikeda v. J. Sisters 57, Inc.*, 14-cv-3570 (ER), 2015 U.S. Dist. LEXIS 87783, at *8 (S.D.N.Y. July 6, 2015) ("It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop

a full factual record"); *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 11617, at *6 (S.D.N.Y., Mar. 20, 2006) ("[j]urisdictional discovery should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary") (citation omitted).

Finally, Defendant's protestations about due process are spurious. As this Court has noted, the burden on out of state defendants litigating in a foreign district is minimal. "With respect to …the burden imposed on Defendant in having to litigate this action in New York- the Court finds this factor incapable of tilting the scales given modern advances in communication and transportation." *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *22. By contrast, a Plaintiff's home state has a manifest interest in providing effective means of redress for its residents…and maintain the action [in New York] would be convenient and efficient for Plaintiff." *Id*.  As such, both due process and personal jurisdiction are satisfied.

### B. DEFENDANT'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION UNDER THE ADA

The precedents established by this Court's honorable colleagues are clear and unequivocal: websites are places of public accommodations under the ADA *per se*.  This follows from the Second Circuit's position, which held that the ADA itself implies that the statute was meant to guarantee more than mere physical access. *See Pallozzi*, 198 F.3d at 32.  Based on this reasoning, courts in this district and throughout this circuit have emphasized that it is the sale of goods and services to the public, and not the location, physical or otherwise, where sale is executed, that determines whether the protections of the ADA apply.  *See e.g., Andrews v. Blick Art Materials,*

*LLC*, 268 F. Supp. 3d 381, 392 (E.D.N.Y. 2017). Courts in this district recently took note of this well-established line of decisions. *Calcano*, 2021 U.S. Dist. LEXIS 41734, at *10.

This has been affirmed again and again in this district, as this Court itself has recognized, "Although the Second Circuit has yet to rule on this issue, a number of courts in this district have held that private commercial websites that affect commerce are places of public accommodation under the ADA." *Thorne v. Boston Mkt. Corp.*, 469 F. Supp 3d 130, 141, (S.D.N.Y. 2020). Indeed, the proposition which Defendant holds forth based on the Eleventh Circuit case of *Gil v. Winn-Dixie*, that a court must analyze whether and to what extent the website impedes a "plaintiff's access to a specific physical, concrete space, and establishes some nexus between the website and the physical place of public accommodation" was dismissed by Judge Woods as "unworkable" and "produc[ing] absurd results." *Dominguez v Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193 at *23 (S.D.N.Y Apr. 23, 2020) (quoting *Andrews v Blick Art Materials, LLC*, 268 F. Supp. 3d at 393); *cf. Gil v. Winn-Dixie Stores, Inc.*, No. 17-13467, 28 Fla. L. Weekly Fed. C 2673 (U.S. 11th Cir. 2021). Following this set of principles, Judge Englemeyer, in a case which Defendant's cited to but did not quote in full, likewise ruled unequivocally that "[a] commercial website itself qualifies as a place of 'public accommodation to which Title III of the ADA affords a right of equal access.'" *Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *20; *cf.* Def Mem. at *10. More recently, this principal was reasserted by Judge Oetken, writing:

> In *Pallozzi*'s wake, multiple district courts in this circuit — including this one — have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store. *See Thorne*, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098, at *2; *see also Del-Orden*, 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *5, (holding that the term "public accommodation" in Title III extends to private commercial websites, and noting that "the four district courts in this Circuit to address the issue have each held ... that Title III extends to online fora offering goods and services"). The Court sees no reason to depart from its holding in *Thorne*.

11

*Jaquez,* 2021 U.S. Dist. LEXIS 96067, at *7-*8.

The narrow reading endorsed by Defendant – namely, that the ADA does not apply to commercial websites – was explicitly turned down by courts in this district and this circuit numerous times. *See, e.g., Jaquez,* 2021 U.S. Dist. LEXIS 96067, at *7-*8; *Andrews*, 268 F. Supp. 3d at 392; *Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *20; *Markett v. Five Guys Enterprises LLC*, 2017 U.S. Dist. LEXIS 115212; *National Federation of the Blind v. Scribd. Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) (holding that Title III of the ADA applied to a digital library subscription service which was only accessible via the internet). There is no ambiguity: in this District, commercial websites as places of public accommodation under the ADA.

Indeed, in a recent oral argument, Judge Ramos indicated that a defendant's citations to precedent in other circuits are unpersuasive as to justify overturning the whole of the Southern District's caselaw:

> THE COURT: And let me begin with Mr. Mizrahi, why don't you tell me a little bit about your case. Is this any different from the other website cases that have been filed in this district?
>
> MR. MIZRAHI [PLAINTIFF COUNSEL]: From what I understand, defendant's main argument is that the website is not a place of public accommodation.
>
> .                  .                  .
>
> THE COURT: Okay. Mr. Redburn [DEFENSE COUNSEL], I take it that you're very familiar with the case law in the Southern District by various of my colleagues. I am familiar with those cases; I tend to agree with the reasoning in those cases. But obviously there is a split in the circuits, so I can't say that your proposed motion is without merit or not colorable. However, it is likely that based on the arguments that have been made and the letters before me, likely that I would deny the motion.

*Sanchez v. Webull Financial LLC*, No. 1:21cv930 (S.D.N.Y. June 9, 2021), ECF No. 18, pp. 2:22-3:13; 4:14-22.

This reading is in turn supported by the Department of Justice of the United States, which has indirectly indicated that the ADA should cover websites. In guidance found in 28 C.F.R. § 35 app. A (2010), the DOJ notes the following:

> "Although the language of the ADA does not explicitly mention the Internet, the Department has taken the position that Title II covers Internet Web site access. Public entities that choose to provide services through web-based applications . . . or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information."

The law of the Southern District is thus unambiguous: the ADA covers websites in and of themselves as places of public accommodation.

Nor is the implication in Defendant's motion that this District's reading of the ADA abnormal remotely true. For example, the Seventh Circuit also refused to limit their interpretation of places of public accommodation to physical locations listed in §12187(7), and when the seminal case in that district came to pass, the Supreme Court of the United States denied certiorari. *See Doe v. Mutual of Omaha Ins. Co*., 528 U.S. 1106 (2000) (cert. denied); see also *Morgan v. Joint Admin Bd*., 268 F.3 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation").

Supporting this, similar decisions have been issued by various federal district courts in several circuits affirming that commercial websites are covered public accommodations. *See, e.g.*, *Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive");

*see also Access Living of Metro Chi. V. Uber Techs, Inc.*, 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012) ("In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public...").

Thus, Defendant's implicit attempts to impugn the decisions of the judges of the Southern District holding that websites are public accommodations as aberrant is unavailing,

### C. PLAINTIFF'S NEW YORK CITY CLAIMS REMAIN VALID

For the same reasons, Defendant's attacks on Plaintiff's New York City claims should also fail. Defendant asserts that the Court must likewise dismiss the New York City claims because Plaintiff lacks personal jurisdiction. Def. Mem. at *11. However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action. Accordingly, as this Court has recognized, Defendant's attempts at obtaining a dismissal of the New York City claims should likewise be denied. *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30,

2019) ("A court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (citing 28 U.S.C. §1367(a)).

## VI. CONCLUSION

For the reasons set forth above, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated: Queens, New York
      October 8, 2021

                                      **MARS KHAIMOV LAW, PLLC**

                                      /s/ Mars Khaimov
                                      Mars Khaimov, Esq.
                                      10826 64th Avenue, Second Floor
                                      Forest Hills, New York 11375
                                      Tel: (929) 324-0717
                                      marskhaimovlaw@gmail.com

                                      *Attorneys for Plaintiff*